Richard J. GRIESSENAUER, Petitioner,

v.

DEPARTMENT OF ENERGY, Respondent.

Appeal No. 84–1291.

United States Court of Appeals, Federal Circuit.

Feb. 8, 1985.

Robert J. Slade, argued, Stockton, Cal., for petitioner.

Ronald D. Schechter, argued, Dept. of Justice, Washington, D.C., for respondent. With him on brief were Richard K. Willard, Acting Asst. Atty. Gen., David M. Cohen, Director and Thomas W. Petersen, Washington, D.C.

Before FRIEDMAN, BALDWIN and BISSELL, Circuit Judges.

FRIEDMAN, Circuit Judge.

This is an appeal from a decision of the Merit Systems Protection Board (Board) dismissing for lack of jurisdiction the petitioner's appeal from his resignation from federal employment. 20 M.S.P.R. 172

The petitioner contended (1) that he had not in fact resigned, and (2) that any resignation of his was involuntary. The Board rejected both contentions and, because its jurisdiction over resignations is limited to involuntary ones, dismissed the appeal for want of jurisdiction. We affirm and, since we conclude that the appeal is frivolous, assess costs and attorney's fees against the petitioner and his attorney.

## I

On June 1, 1982, the petitioner, an employee of the Bonneville Power Administration, made a telephone call to his supervisor, Mr. Miller. Prior thereto, the petitioner had been the subject of several disciplinary actions by his agency. During the preceding 4 months, Miller had several conversations with the petitioner "concerning his job performance" and in which Miller told him he "had to improve his performance and '[a]lternatively, he could become subject to removal or he could resign.'"

There was a sharp disagreement in the testimony before the presiding official over what was said in that telephone conversation. The presiding official stated that Mr. Miller testified that

[the petitioner] informed him that he had talked at length with his wife about his problems at Bonneville, and had decided to resign. According to Mr. Miller, [the petitioner] wanted to resign immediately so the processing of the return of his retirement monies could commence. [The petitioner] states that this conversation never took place and instead maintains that Mr. Miller informed him that he had *already* processed his "resignation" and there was nothing he could do to change the situation. (Emphasis in original.)

The presiding official discussed in detail the parties' different versions of that conversation and other testimony relating to the petitioner's resignation, as well as the factors relating to the credibility of the witnesses. After a full review of the evidence, the presiding official stated that "to believe" the petitioner's "story," the testimony of Miller and three other agency witnesses "would have to be inaccurate or an outright fabrication. I find no basis to make such a finding." The presiding official then found:

After carefully viewing the demeanor of each witness during the hearing, I find Mr. Miller's testimony credible concerning his telephone conversation with [the petitioner] on June 1, 1982. I also find that by [petitioner's] own admission, Mr. Miller made efforts to help him ... and I do not credit [petitioner's] theory that Mr. Miller processed his resignation in order to avoid going through the formal procedures of actually terminating [the petitioner].

Thus, based on the documents submitted, the testimony of all the witnesses, and the respective credibility of each of these witnesses, I find [the petitioner] orally resigned on June 1, 1982, and the effective date of his resignation was June 1, 1982. I also find that [the petitioner] subsequently tried to retract his resignation on June 7, 1982. However, since [petitioner's] resignation was already effected, he could not revoke it at his option. (Record reference omitted.)

The Board granted a petition to review and affirmed the initial decision of the presiding official with one modification. The presiding official had concluded that the only question was whether the petitioner had resigned on June 1, 1982, and that the voluntariness of the resignation was not in issue. The Board held that voluntariness was an issue in the case. It then ruled:

We further find, however, that [the petitioner] has not carried his burden of establishing that the resignation was involuntary. Although the record indicates that [petitioner's] supervisor informed him that the agency would probably propose [petitioner's] termination if he did not resign, this fact, standing alone does not constitute duress or coercion sufficient to render the resignation involuntary.... The fact that appellant was faced with two unpleasant alternatives does not make the action taken

involuntary.... Thus, we conclude that the presiding official's failure to rule on this issue did not prejudice appellant's substantive rights and did not, therefore, constitute harmful adjudicatory error.... Therefore, we find no basis to disturb the presiding official's finding that the resignation action was not within the Board's jurisdiction. (Citations and record references omitted.)

## II

In his appeal to this court, the petitioner challenges the Board's decision on two grounds: (A) the Board improperly determined on the record that the petitioner voluntarily resigned on June 1, 1982; and (B) the Board failed to "give any weight" to the agency's failure to comply with "certain rules set forth in the Federal Personnel Manual" dealing with resignations.

■ A. The determination of the credibility of the witnesses is within the discretion of the presiding official who heard their testimony and saw their demeanor. *Brewer v. United States Postal Service,* 227 Ct.Cl. 276, 647 F.2d 1093, 1096 (1981), *cert. denied,* 454 U.S. 1144, 102 S.Ct. 1005, 71 L.Ed.2d 296 (1982). Here the presiding official credited the testimony of the agency witnesses and rejected the conflicting testimony of the petitioner. That choice was one the presiding official was fully justified in making on this record. The petitioner has given no convincing reason for us to reject those credibility determinations, and we see no basis for doing so.

■ At oral argument, petitioner admitted that if we accept the presiding official's credibility determinations, which we do, there is no basis for rejecting the Board's finding that the petitioner voluntarily resigned on June 1, 1982. Moreover, as the Board pointed out, the fact that the petitioner was faced with the probability that the agency would remove him unless he resigned, did not make his resignation involuntary. *See Christie v. United States,* 207 Ct.Cl. 333, 518 F.2d 584, 589 (1975).

B. The petitioner argues that the Board improperly failed to give sufficient weight to provisions of the Federal Personnel Manual, which the agency did not follow, stating (1) that an employee who announces his resignation "should" be asked to submit a detailed written resignation; (2) that if an employee declines to submit a written resignation, the oral resignation should be accepted, "preferably" in the presence of witnesses, and that the official receiving the oral resignation "should" record and place in the employee's personnel folder data concerning the resignation, together with any appropriate statements of the witnesses; and (3) whether the resignation is written or oral, reasons for it "should" be obtained whenever possible.

The presiding official held that "[t]hese guidelines suggest procedures to be utilized by an agency to effect a voluntary resignation," and "are clearly precatory, not mandatory." The Board agreed. At oral argument the petitioner himself admitted that these provisions are precatory.

■ The provisions are intended to aid government officials in handling resignations by suggesting procedures to be followed that will avoid or minimize subsequent disputes concerning the resignation and to strengthen the government's case in any litigation regarding it. They do not create any rights in an employee, and the government's failure to observe the suggestions does not provide a basis for challenging the government's acceptance of an oral resignation.

■ Although at oral argument the petitioner contended that the government's nonobservance of these provisions weakened the testimony of the agency witnesses, it provided no basis for that claim, and we cannot see any. The determination by the presiding official of which witness's testimony to accept depended upon his evaluation of the witness's credibility in light of all the evidence, not upon whether the government followed the suggestions in the Federal Personnel Manual for the preferred manner of handling resignations.

## III

The utter lack of any merit to the petitioner's arguments on appeal ineluctably leads to the conclusion that this appeal is frivolous.

 As we recently reiterated, and have made clear to litigants and their attorneys, the prosecution of a frivolous appeal will result in the imposition of costs and attorney's fees against the offending parties and their attorneys. *Moir v. Department of the Treasury,* 754 F.2d 341 (1985). Accordingly, we assess costs and attorney's fees of five hundred dollars ($500) in favor of the government, jointly and severally against Mr. Griessenauer and his attorney, Robert J. Slade.

AFFIRMED.